Electronically Filed - City of St. Louis - July 08, 2019 - 05:33 PM

### IN THE CIRCUIT COURT OF ST. LOUIS CITY
### STATE OF MISSOURI

| | |
|---|---|
| **JAMIE RICHARDS,** *individually and on behalf of all others similarly situated,* | ) ) ) ) |
| | Case No. _____ |
| **Plaintiffs,** | ) ) |
| v. | **JURY TRIAL DEMANDED** |
| **CONOPCO, INC.,** *d/b/a* **"UNILEVER,"** **DOES 1 through 10,** | ) ) ) ) |
| **Defendants.** | ) |

### CLASS ACTION PETITION

Plaintiff Jamie Richards individually and on behalf of all others similarly situated, hereby files this, her Class Action Petition, against Defendant Conopco, Inc., *d/b/a* "Unilever" and DOES 1 through 10 (collectively "Defendants") for their false, misleading, and deceptive marketing of their products constituting, on a nationwide basis, breach of warranty, breach of implied contract, and unjust enrichment, and, in the state of Missouri, violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

### I.  INTRODUCTION

1. Defendant Unilever markets and sells many different consumer products, including deodorant and antiperspirant sticks. One such product is "Dove"-branded "Invisible Advanced Care" antiperspirant for women.

2. The "Invisible" line of products is deceptively and misleadingly marketed as causing "No white marks on 100 colors," and being "invisible;" yet, in reality, the "Invisible" line of antiperspirant is nothing more than a slightly diluted version of regular "Advanced Care" containing the same ingredients with nothing "added" and nothing to support Defendant's claims.

3. Compared to the non-"Invisible" version of "Advanced Care," "Invisible" does not contain a single additional ingredient or material change of formula; the only material difference is that the Active ingredient in "Advanced Care," Aluminum Zirconium Tetrachlorohydrex GLY, is diluted from a concentration of 15.2% in Dove's non-"Invisible" antiperspirants to 11.4% in the "Invisible" line of products.

4. Yet even more problematic, despite the Product claiming to be "Invisible," and "proven to leave no white marks on 100 colors of clothing," white marks are in fact *created* and *caused by* that very same active ingredient, Aluminum Zirconium Tetrachlorohydrex GLY ("Aluminum").

5. Moreover, simple testing of the Product, applied directly and/or transferred to a wearer's clothing from a user's skin, establishes that it *absolutely* is not "invisible" and, contrary to Defendant's claims, it *does* leave white marks on multiple clothing of essentially all colors.

6. In short, while "Invisible" is expressly claimed (in addition to its mere name) as being "invisible," and "proven to leave no white marks on 100 colors of clothing," it is nothing more than a less-effective version of "Advanced Care" that actually causes the very problem it claims to solve, leaving white marks on clothing of nearly every color.

7. Despite all this, and despite being a diluted version thereof, Unilever sells the product for the same price as its non-"Invisible" product, misleading and deceiving the buying public into paying the same amount for an inferior product that does not live up to any of its claims, while under the false impression that it is somehow superior.

8. Pursuant to the MMPA, such practice is illegal.

9. In addition to the above, specifically relating to the nationwide class, since the initial offering of the Product, each and every container of the Product has borne a uniformly-worded label falsely claiming the Product leaves and/or causes "no white marks on 100 colors." That uniformly-worded false statement gives rise to additional and/or alternative claims on behalf of a nationwide class

of similarly-situated consumers.

## II.     PARTIES, JURISDICTION, AND VENUE

10.     Plaintiff Jamie Richards is a citizen and resident of St. Louis City, Missouri.

11.     Plaintiff brings this Class Action Petition individually and on behalf of a putative nationwide class of all United States consumers and, additionally or alternatively, a putative class of Missouri residents.

12.     Defendant Conopco, Inc. *d/b/a* "Unilever" (hereinafter "Unilever") is a New York corporation having its principal place of business at 700 Sylvan Ave., Englewood Cliffs, NJ 07632. Unilever may be served at: CT Corporation System, 120 South Central Ave., Clayton MO 63105.

13.     Defendant Unilever advertises, distributes, markets and sells the "Dove"-branded "Invisible Advanced Care" antiperspirant for women.

14.     The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  If necessary, Plaintiff will seek leave of Court to amend the Petition to reflect the true names and capacities of the DOE Defendants when such identities become known.

15.     Venue is proper in the Circuit Court of St. Louis City, Missouri, because the Plaintiff resides here, and a substantial part of the events or omissions giving rise to the claims in this action occurred in this venue.

16.     This asserted class action comports with Missouri Supreme Court Rule 52.08 and with R.S.Mo. § 407.025(3) of the MMPA.  Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable.  This action raises questions of law and fact common among Plaintiffs.  The claims of lead Plaintiff is typical of all Plaintiffs' claims. Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys

qualified to pursue this action. More specifically:

17.     <u>Class definition</u>:  Plaintiff Jamie Richards brings this action on behalf of herself and a class of similarly-situated persons preliminarily-[1] defined as follows: All persons who purchased "Dove"-branded "Invisible Advanced Care" antiperspirant for women (the "Product")[2] in the United States during the Class Period.  In addition, and/or alternatively, Plaintiff Jamie Richards brings this action on behalf of herself and a Missouri subclass of similarly-situated persons defined as follows: All persons, who, within the Class Period, purchased the Product in the State of Missouri.  The Class Period begins five years prior to the date of the filing of this Petition, and ceases upon the date of the filing of this Petition.  Excluded from the Class and Subclass are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

18.     <u>Numerosity</u>:  Upon information and belief, the Class and Subclass include tens of thousands, if not hundreds of thousands, of individuals on a statewide basis, making their individual joinder impracticable.  Although the exact number of Class and Subclass members and their addresses are presently unknown to Plaintiff, they are ascertainable from Defendants' records.

---

[1] Plaintiff reserves the right to propose, as needed, any different or other more- or less-specific class, classes, subclass, or subclasses as Plaintiff deems appropriate for purposes of class certification.
[2] As that term and label is defined in greater detail *infra*.

4

19.     Typicality: Plaintiff's claims are typical of those of the Class and Subclass because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, using misleading and deceptive marketing and advertising in offering and selling the Product to Plaintiffs.

20.     Adequacy: Plaintiff Jamie Richards is an adequate representative of the Class and/or Subclass because her interests do not conflict with the interests of the Class or Subclass members she seeks to represent, she has retained competent and experienced counsel, and she intends to prosecute this action vigorously. The interests of the Class and Subclass will be protected fairly and adequately by Plaintiff and her counsel.

21.     Commonality: Common questions of law and fact exist as to all Class and Subclass members and predominate over any questions affecting only individual members, such as: (a) whether the Defendant used deceptive or misleading marketing and advertising in selling the Product; (b) whether and to what extent the Class and Subclass members were injured by Defendant's illegal conduct; (c) whether the Class and Subclass members are entitled to compensatory damages; (d) whether the Class and Subclass members are entitled to punitive damages; (e) whether the Class and Subclass members are entitled to declaratory relief; and (f) whether the Class and Subclass members are entitled to injunctive relief.

22.     Superiority: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by the individual Class and Subclass members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct. Thus, it would be extremely difficult for the individual Class and Subclass members to obtain effective relief. A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

Electronically Filed - City of St. Louis - July 08, 2019 - 05:33 PM

## III.   BACKGROUND

23.   Defendant manufactures, distributes, and/or sells the product at issue herein, "Dove"-branded "Invisible Advanced Care" antiperspirant for women.

24.   Defendant Unilever, in particular, owns the "Dove" brand and, under that brand name, manufactures and distributes, *inter alia,* "Dove"-branded "Invisible Advanced Care" antiperspirant for women.

25.   The "Invisible" line of products is marketed as being superior to "regular" "Advanced Care" antiperspirant purportedly for Defendant's "best white mark protection in an antiperspirant stick."[3]

26.   The "Invisible" line of products comes in multiple scents, but the ingredients of each scent are substantially the same such that all scents and varieties of the "Invisible Advanced Care" line should be treated collectively, and thus hereinafter are collectively referred to as the "Product."

27.   The packaging of the Product makes at least one material, yet false, claim:



a.

---

[3] https://www.dove.com/us/en/deodorants/stick/invisible-advanced-care-sheer-fresh-antiperspirant.html

28. As shown, the "Invisible" line is marketed as leaving "no white marks on 100 colors."

29. Further, on Unilever's "Dove"-branded website, www.dove.com, on the page devoted to the Product, Defendant states that the Product "is invisible, proven to leave no white marks on 100 colors of clothing."[4]

30. Moreover, in the "about this product" portion of Unilever's website, the Product is promoted as having "[Dove's] best white mark protection in an antiperspirant stick." https://www.dove.com/us/en/deodorants/stick/invisible-advanced-care-sheer-fresh-antiperspirant.html

31. Further, the website states: "No white marks deodorant is invisible on 100 colors;" and claims that "[t]his antiperspirant deodorant stick is invisible on 100 different colors." *Id.*

32. However, the active ingredient in the Product is Aluminum Zirconium Tetrachlorohydrex GLY. It has long been recognized, and is well-accepted, that "white marks" on clothing is *caused* by aluminum in antiperspirants (generally upon being mixed with a user's perspiration).

33. *A fortiori,* simple testing of the Product by any user after purchasing the same reveals that the Product *absolutely* leaves white marks on a variety of colors of clothing; testing reveals that the Product is *not*, in any sense of the word, "invisible."

34. While the Product might in fact cause *less* white marks than the "normal" "Advanced Care Product" and/or other antiperspirants on the market, it is irrefutable that the Product will inevitably lead and contribute to more white marks on clothing.

35. Thus, regardless of the extent, the Product causes, at least indirectly, the exact condition – "white marks" – that it purports to "protect" against.

36. The term "invisible" is defined by Merriam-Webster online dictionary as "incapable by nature of being seen: not perceptible by vision;" and/or "of such small size or unobtrusive quality as to

---

[4] https://www.dove.com/us/en/deodorants/stick/invisible-advanced-care-sheer-fresh-antiperspirant.html

7

be hardly noticeable."[5] Yet when applied to, and or transferred from a wearer's skin to numerous different colors of material, the Product is clearly visible, and clearly white-tinted; the claims that it leaves "no white marks" and/or is "invisible" are patently false.

37. In addition, while Defendant claims the product has "white mark protection," asserting that it has something *extra, i.e.* "protection," relative to "regular" "Advanced Care," in reality, it has no added ingredients whatsoever compared to "regular" Advanced Care."

38. According to Unilever's Dove-branded website, www.Dove.com, and confirmed by corresponding product packaging, both the Product and the non-"Invisible" "Advanced Care" line contain the following ingredients:

    a. Active Ingredient: Aluminum Zirconium Tetrachlorohydrex GLY

    b. Inactive Ingredients:

        i. Cyclopentasiloxane, Stearyl Alcohol, C12-15 Alkyl Benzoate, PPG-14 Butyl Ether, Hydrogenated Castor Oil, PEG-8, Dimethicone, Fragrance (Parfum), Silica, Polyethylene, Helianthus Annuus (Sunflower) Seed Oil, Steareth-100, BHT.

39. The only difference in formulas, in fact, is that "regular" "Advanced Care" also contains Hydroxyethyl Urea, whereas the Product does not.

40. Upon information and belief, and based on a reasonable person's common understanding, removing Hydroxyethyl Urea does not constitute the addition of "protection" against white marks.

41. Otherwise, the only material difference between the Product and the non-"Invisible" line is that the active ingredient, Aluminum Zirconium Tetrachlorohydrex GLY, is diluted from 15.2% (in the non-"Invisible" line) to 11.4% in the Product.

---

[5] https://www.merriam-webster.com/dictionary/invisible

Electronically Filed - City of St. Louis - July 08, 2019 - 05:33 PM

Electronically Filed - City of St. Loui - July 08, 2019 - 05:33 PM

42. Such dilution of an active ingredient is not added "protection."

43. Rather, the dilution of an active ingredient more likely simply reduces the effectiveness of the "normal" product, making the Product, in reality, inferior to the non-"Invisible" "Advanced Care" line.

44. And that deceptive fact is in addition to the worse reality that the Product absolutely leaves white marks on clothing and is not, in any sense of the word, "invisible."

45. Honest marketing and/or claims would include statements such as "less likely to cause white marks versus other lines" or "reduced white mark causation versus other lines"; Defendant's "No white marks" and "invisible" claims are patently false.

46. A normal consumer is unable to determine simply by reading the claims on the Product packaging and/or the Product's ingredient list that it actually contains no added "protection" ingredients relative to Defendant's non-"Invisible" line of products.

47. And while the fact is extremely well-established, a normal consumer also is unaware that Aluminum Zirconium Tetrachlorohydrex GLY is a key factor that contributes to and, at least indirectly, *causes* the "white marks" the Product purports to "protect" against.

48. Moreover, while the Product very obviously leaves "white marks" on clothing, a potential purchaser is unable to test that fact prior to purchasing the Product.

49. Upon information and belief, Defendant Unilever profits from the wide-spread practice of selling a diluted version of its regular product for the same price as non-diluted versions.

50. Upon information and belief, it is cheaper for Unilever to produce the Product, a relatively-diluted version of its regular antiperspirant, than it is to produce its regular antiperspirant, such as the "regular" non-"Invisible" "Advanced Care" line of antiperspirants.

51. Upon information and belief, Defendant Unilever deceptively and misleadingly markets the Product as falsely having "protection" against white marks and leaving "no white marks" in order to

distract consumers from the fact that the Product is, in fact, inferior in its primary purpose, preventing perspiration, and is cheaper to produce.

52. Defendant's marketing and selling of the Product by use of the aforementioned false, deceptive, and misleading statements is illegal and prohibited under the MMPA.

*Allegations Relating Specifically to Claims of the Nationwide Class*

53. As noted, *supra,* since the initial offering of the Product, each and every container of the Product has borne a uniformly-worded label falsely claiming the Product causes and/or produces "No white marks on 100 colors" (hereinafter "False Claims").

54. In reality, testing of the Product reveals the falsity of the False Claims; the Product readily leave white marks on multiple colors of clothing, whether when directly contacting clothing or when transferred to clothing after application to a user's skin.

55. Defendant, as developer, manufacturer, and exclusive seller and distributor of the Product, has been aware since the Product's inception that the False Claims are in fact false – that the Product leaves white marks on multiple different colors.

56. Indeed, Defendant undoubtedly did its own testing of the Product prior to it being offered for sale and, of necessity, such testing would have made Defendant aware that the Product leaves white marks on clothing of all colors.

57. Despite this, Defendants purposely made the False Claims in order to induce the false belief in consumers that they were purchasing a product that caused no white marks on 100 colors of clothing.

58. Plaintiff and the class members purchased the Product with no reason to suspect or know that the Product actually caused white marks on clothing.

59. Defendant possessed specialized knowledge regarding the data and information concerning the chemical formula of the Product and whether the Product would, in fact, cause white

marks on clothing.

60. In fact, the Product is a credence good because its purported "no white marks" benefit cannot be independently assessed or verified by the consumer at the time of purchase, as retailers prohibit a consumer testing the Product on themselves and/or their clothing and the Product is covered by plastic until after purchase.

61. In purchasing the Product, Plaintiff and the class members had no choice but to necessarily and justifiably rely upon the False Claims as accurate.

62. Had Plaintiffs known that the False Claims were false, Plaintiffs would not have purchased the Product or would not have paid as much for the Product.

63. As the direct and proximate result of the False Claims, Plaintiff and the class members have suffered economic injury by being deprived of the benefit of the bargain they were promised by Defendant.

64. By marketing, selling and distributing the Product to purchasers in Missouri and throughout the United States, Defendant made actionable statements that the Product would cause and/or create and/or lead to "No white marks on 100 colors," and at all times failed to disclose that the Product did in fact cause and/or contribute to white marks on nearly all colors.

65. Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.

66. Alternatively, Defendant was reckless in not knowing that the False Claims were false and misleading at the time they were made.

67. As the distributor, marketer, producer, manufacturer, and seller of the Product, Defendant possessed specialized knowledge regarding the data and information concerning the chemical formula of the Product which the Plaintiff and the class members could not and did not review.

Electronically Filed - City of St. Louis - July 08, 2019 - 05:33 PM

68. All of Plaintiffs' claims are based on misleading statements that violate FDA regulations. Such claims do not seek to impose any additional or different obligations beyond those already required by such FDA regulations.

69. Further, Plaintiffs' claims arise, *inter alia,* from "front of the box" statements and symbols which are not regulated by the Nutrition Labeling and Education Act.

*Facts Particular to Jamie Richards and Representative of the Proposed Class & Subclass*

70. In or around July of 2019, after having viewed Defendant's statements regarding the Product on www.dove.com, and other websites as described *supra,* Plaintiff visited a retail outlet for Unilever products, particularly CVS Pharmacy at 8021 Watson Rd., Webster Groves, MO 63119.

71. While there, Plaintiff observed that the Product was being sold for the same price as "regular" "Advanced Care" antiperspirant.

72. Due to the claims on the packaging as well as the statements on www.dove.com, Plaintiff falsely believed she was purchasing a product that was equally effective as the regular "Advanced Care" antiperspirant but having "protection" against white marks; and Plaintiff believed the Product would leave "no white marks" and be "invisible" on her clothing.

73. Plaintiff thereafter purchased the Product.

74. At the time she purchased the Product, Plaintiff was unaware of the falsity of the Product's claims and/or the falsity of Defendant's online claims regarding the Product and/or the falsity of the False Claims.

75. If Plaintiff had been aware of the falsity and misleading nature of Defendant's claims regarding the Product, she would not have bought the Product.

76. When Plaintiff purchased the Product, she was injured by Defendant's illegally deceptive, false, and misleading conduct in marketing and selling the Product.

77. Although the aforementioned facts apply to named Plaintiff, for purposes of the proposed

Electronically Filed - City of St. Loui - July 08, 2019 - 05:33 PM

class, all that is relevant is that Plaintiff and the class members, United States and Missouri citizens, purchased the Product at a time within the Class Period while in the United States and/or Missouri.

## CAUSES OF ACTION

### COUNTS RELATING TO THE NATIONWIDE CLASS

**COUNT ONE: BREACH OF WARRANTY**

78. Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Petition.

79. Defendant sold the Product in its regular course of business. Plaintiff and the class members purchased the Product.

80. Defendant made promises and representations in an express warranty provided to all consumers, namely the False Claims -- that the Product would cause, create, and or lead to "no white marks on 100 colors."

81. The False Claims became the basis of the bargain between the Defendant and Plaintiff and each class member.

82. Defendant gave these express warranties to Plaintiff and each class member in written form on the labels of the Product.

83. Defendant's written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty.

84. Defendant breached the warranty because the False Claims were false – the Product in fact causes white marks on 100s of colors.

85. The False Claims were false when the sales took place and were undiscoverable to Plaintiff and the class members at the time of purchase.

86. All conditions precedent to seeking liability under this claim for breach of express

Electronically Filed - City of St. Loui - July 08, 2019 - 05:33 PM

warranty have been performed by or on behalf of Plaintiff and the class in terms of paying for the Product. Defendant had actual notice of the false labeling information and to date has taken no action to remedy its breach of express and implied warranty.

87. Defendant previously knew or should have known of the falsity of the False Claims on the Product due to, *inter alia,* Defendant's testing and use of the Product.

88. Defendant has nonetheless refused to remedy such breaches.

89. By placing the Product in the stream of commerce, and by operation of law and the facts alleged herein, Defendant also impliedly warrantied to Plaintiff and the class members that the Products were accurately labeled in conformance with the law.

90. Defendant's breaches of warranty have caused Plaintiffs and class members to suffer injuries, paying for falsely labeled products, and entering into transactions they otherwise would not have entered into for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and class members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the product as promised and the value of the product as delivered.

91. As a result of Defendant's breach of these warranties, Plaintiff and class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relied as deemed appropriate, in an amount sufficient to compensate them for not receiving the benefit of their bargain.

**COUNT TWO: BREACH OF IMPLIED CONTRACT (IN THE ALTERNATIVE)**

92. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

93. By operation of law, there existed an implied contract for the sale of the Product between Defendant and Plaintiff and each class member who purchased the Product.

94. By operation of law, there existed an implied duty of good faith and fair dealing in each such contract.

95. By the acts alleged herein, Defendant has violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendant and each class member.

96. As a result of that breach, Plaintiff and each class member suffered damages.

**COUNT THREE: UNJUST ENRICHMENT**

97. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

98. Plaintiff pleads her claim for relief in the alternative to the contract claims set forth above.

99. Plaintiff and the class members have conferred substantial benefits on Defendant by purchasing the Product, and Defendant has knowingly and willfully accepted and enjoyed those benefits.

100. Defendant either knew or should have known that the payments rendered by Plaintiff and the class members were given and received with the expectation that the Product would be as represented and warranted. For Defendant to retain the benefit of the payments under these circumstances is inequitable.

101. Through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the Products, including the False Claims, Defendant reaped benefits, which result in Defendant wrongfully receiving profits.

102. Equity demands disgorgement of Defendant's ill-gotten gains. Defendant will be unjustly enriched unless Defendant is ordered to disgorge those profits for the benefit of Plaintiff and the class members.

103. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the class members are entitled to restitution from Defendant and institution of a

constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant through this inequitable conduct.

## COUNTS RELATING TO THE MISSOURI SUBCLASS

**COUNT FOUR: VIOLATION OF THE MMPA – Misleading, False, and Deceptive Marketing**

104.   Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Petition, as though fully set forth herein.

105.   Defendant's acts complained of herein occurred in and emanated from the State of Missouri.

106.   Plaintiff and all members of the Missouri Subclass are "persons" and the Product is "merchandise" as those terms are defined under the MMPA.

107.   As set out in this Petition, Defendant's marketing of the Product constitutes deception, false pretense, misrepresentation, unfair practice, or, at a minimum, the concealment, suppression, or omission of a material fact in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA"), in particular, Defendant marketed the Product by falsely claiming it contained an "protection" against white marks and by claiming that it is "invisible" and leaves "no white marks" on clothing when, in reality, it leaves white marks on clothing of almost every color.

108.   As a result of Defendant's actions, consumers, including Plaintiff, were misled or deceived that the Product they were purchasing contained "protection" from marks, in comparison to the non-"Invisible" "Advanced Care" line of antiperspirants, that it was "invisible" and that it would leave "no white marks" on clothing.

109.   Defendant's deceptive acts caused Plaintiff and the Missouri Subclass Members an ascertainable loss within the meaning of the MMPA.  In particular, Plaintiff and the Missouri subclass paid for a Product that did not, in fact, live up to any of the claims made on the packaging or on Defendant's website: the Product leaves marks on clothing and is not, in any sense of the word,

Electronically Filed - City of St. Loui - July 08, 2019 - 05:33 PM

Electronically Filed - City of St. Loui - July 08, 2019 - 05:33 PM

"invisible;" the Product does not live up to the False Claims in any manner.

110.  Due to Defendant's illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendants.

111.  In addition, Defendant's conduct as aforesaid was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiffs and others similarly situated and, therefore, warrants the imposition of punitive damages.

112.  Plaintiffs have been forced to hire attorneys to enforce their rights under the MMPA.

**COUNT FIVE: INJUNCTIVE RELIEF**

113.  Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

114.  Defendant continues to retain payment made by Plaintiff and other members of the Class for the Product that is the result of Defendant's deceptive and misleading marketing in violation of the MMPA.

115.  Applicable law, including R.S. Mo. § 407.025, permits the Court to enter injunctive relief to prevent Defendant's continued violation of the law by continuing to falsely state that the Product contains "protection" against white marks and/or is "invisible" and/or leaves "no marks on 100 colors."

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an order certifying this action as a Nationwide class action, along with a Missouri subclass, and appointing Plaintiff Jamie Richards as Class and Subclass representative and her counsel as class counsel.  Plaintiff requests that this court find that the Defendant is liable pursuant to the aforementioned nationwide claims; and/or violated the MMPA, and award Plaintiffs compensatory damages, restitution, attorneys' fees, punitive damages, costs, and such further relief as the Court deems just.

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: /s/ *Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*